REGAN, Judge.
Plaintiff, Edward L. Hodge, as a candidate for alderman of the City of Gretna in the first Democratic primary election, instituted this mandamus suit against the defendants, the Democratic Executive Committee[1] of the City of Gretna, et al., endeavoring to have himself certified as a candidate in the second primary election and to delete the name of Louis A. Le-Boeuf, Jr., as the Democratic nominee for alderman, asserting that the defendants improperly computed the total number of votes cast in the first primary by deducting therefrom 185 votes and then as a result thereof miscalculated the number of votes required to constitute a majority; that predicated on these errors, one of the defendants, Louis A. LeBoeuf, Jr., was illegally declared to be the Democratic nominee.
Defendants pleaded exceptions to the jurisdiction of the court, improper form of pleading and misjoinder of parties defendant. The first two exceptions were overruled and the third was maintained only insofar as the committee members individually were deleted as defendants.
*327 Defendants then answered and insisted that the deduction of 185 votes which plaintiff complains of was proper since the candidate who had received these votes had withdrawn from the aldermanic election.
From a judgment in favor of plaintiff as prayed for, the defendants have appealed.
The trial judge made a thorough analysis of this case in his written reasons for judgment, which in our opinion fully encompasses the subject posed for our consideration and the result which we have agreed should be reached.
 “Defendants filed exceptions to the jurisdiction of this Court, improper form of pleading and misjoinder of parties. As to the latter two exceptions, the Court feels that they are without merit for the reason that the law specifies no particular form of proceeding in such election suits, and the jurisprudence is full of proceedings such as this, including several of the cases that the defendants relied upon in support of their position on the other exceptions. As to misjoinder of parties, there is no question but that the defendant, Louis A. LeBoeuf, Jr., must be a party defendant since he has a vital interest in this suit, and the Court can see no objection to joining the Democratic Committee, which is not a vital party, but in view of the relief sought, certainly should be joined herein to facilitate and expedite the proceedings and the result thereof. As to the individual members of the Committee, they have no particular interest outside of the Committee, and they should be deleted as defendants individually.
“The exception to the jurisdiction of the Court, however, requires considerable attention. This exception is based upon the provisions of R.S. 18:364(H): 'No contest shall be entertained unless brought within two days after the official promulgation of the result of the election, made by * * * respective Committees as pro* vided in this part’.
“The promulgation by the Committee was Friday, April 14, 1961, at 7:00 o’clock P.M. The two day term thus provided would expire 7:00 o’clock P. M., Sunday, April 16th. Suit was filed 10:00 o’clock A.M., Monday, April 17th. The jurisprudence is quite positive to the effect that the two day term includes holidays, and that they are to be counted in computing the term. The sole question here is whether a suit filed the next judicial day is in time if the last day of the term is a legal holiday.
“In the case of Mansur v. Abraham, 183 La. 633, 164 So. 421 (1935) the Supreme Court of Louisiana, after a full discussion of the subject and consideration of the pertinent authorities, expressly held that when the last day of a term allowed by law for taking any stated action in a judicial proceeding falls on Sunday or any other legal holiday, the action may be taken on the next day following, as effectively as if taken on the day before the last day of the term. This case was not an election suit, but was an ordinary proceeding on a tort claim, concerned with prescription of one year. This principle of law was later expressly recognized as applying to election contest suits in the case of State ex rel. Graham, et al. v. Republican State Central Committee of Louisiana, 193 La. 863, 192 So. 374 (S.Ct.La.1939), which involved the interpretation of Section 11 and Section 27 of the Primary Election Law (Act No. 97 of. 1922, as amended by Act No. 110 of 1934).
“The case at bar and the Graham case are almost identical. The wording of the statute is identical and the only difference in the pertinent facts is that in this case both days are holidays; *328 and in that case only the last day was a holiday. The Graham case not only .adopted the principle of the Mansur ■case but even pointed out the situation that would occur in the case at bar. The Court said ([192 So.] P. 378).
“ ‘Under respondent’s contention, should the two days allowed by law for the bringing of a suit of this character happen to fall on successive legal holidays a person seeking to bring such a suit would be powerless to act. He would be remediless under the very terms of the statute giving him the remedy. It is not reasonable to suppose the legislature intended that such an absurb consequence would result from the application or attempted application of the statutory provisions.’
“The rule laid down in the Graham case and the Mansur case has been cited with approval ever since its pronouncement. The clarity of the rule is well demonstrated in the case of Bergeron, et al. v. Rappelet, 212 La. 717, 33 So.(2d) 207 (S.Ct.La.1947), which served to explain what appeared at first glance to be a tacit reversal of the Court’s position in the case of Brown v. Democratic Parish Committee of St. Bernard Parish, 183 La. 967, 165 So. 167 (1935) which held that the limitations imposed by the statute should be strictly adhered to. The explanations of the Supreme Court in the Bergeron case show the application of the rule under any circumstance. See, for example, Janssen v. Second Congressional District Democratic Executive Committee [235 La. 353], 103 So. (2d) 472 (Orl.App.1958), and Andrews v. Knight, [La.App.] 103 So. (2d) 549, 552.
“The defendants contend that the rule was changed by the decision in O’Keefe v. Burke,[2] 226 La. 1039, 78 So. (2d) 165 (La.S.Ct.1955), and they cite this case as authority that, under this same sequence of time and events, the case at bar should have been filed on Sunday. This is in error. That case held that a contestant should not be penalized for being fortunate enough to have been able to get his suit filed on a Sunday and indicates that any concern over the matter was unwarranted.
“The Court is therefore of the opinion that suit was timely filed and the exception of jurisdiction should be dismissed.
* ifc * ❖ sfc
“On April 8, 1961, a Democratic Primary Election was held in the City of Gretna for the purpose of electing the Democratic nominees for certain City positions, including five aldermen. Fourteen candidates qualified for these posts. A total of 22,075 votes were cast, of which
“Edward L. Hodge received 1640 votes
“Louis A. LeBoeuf, Jr., received 2196 votes
“Thomas Fonti received 185 votes.
Four candidates, including LeBoeuf, were certified to have been elected by the Committee and two candidates were certified as opponents for the remaining post in the second primary. There is no dispute except as to Le-Bouef. A reading of relator’s petition shows the factual situation. The issues *329 are whether Thomas Fonti withdrew from the race and whether votes cast for him should be counted in the total. All other facts were agreed upon.
“On or before April 5, 1961, one Candidate, Thomas Fonti, announced that he was withdrawing his candidacy. This was done verbally and a news item to that effect appeared in the daily paper. He did not make any written withdrawal nor did he notify the Democratic Committee or the Secretary of State of his intention. If his actions did not constitute a legal withdrawal and he was still a candidate, then, of course, votes cast for him were legally cast and should be counted.
“Relator contends that the only way a legal withdrawal may be made is the written request provided for in [LSA-] R.S. 18:311(D) :
“ ‘Any person nominated [3] as a candidate may cause his name to be withdrawn as a candidate by request in writing, signed by him and acknowledged in original and duplicate before any officer qualified to administer oaths. The original shall be filed with the Secretary of State, and the duplicate with the Committee which called the election.’
The Court is in agreement with this proposition. Defendants contend this procedure is only for the purpose of withdrawal of deposits and that there are other ways a candidate can withdraw.
“As this section originally appeared in the Revised Statutes of 1950, it did not specify any method of withdrawal, except that the withdrawal was to be filed with the Committee. It appears that the major purpose of the section was not to provide a method of withdrawal but to set a deadline for refund of the qualifying deposit. ' The amendments to Act No. 46 of 1940 seem to bear this out. See Act No. 351 of 1946, Sec. 6, which made refunds permissive and not mandatory. See also Act No. 627 of 1954 which simply changed the deadline for refunds. The General Election Law [LSA-] R. S. 18:630 provided a method for withdrawal in general elections. Presumably a candidate could withdraw by using the same method by which he announced or qualified. Both of these methods require written withdrawal filed with some official.
“The Legislature, by virtue of Act No. 281 of 1960, placed this section in its present form, and an examination of that Act leaves no doubt as to the intention of the Legislature in providing the method of withdrawal. The title of the Act reads:
“ ‘To amend and re-enact Sections 311D, as amended by Act 627 of 1954, and 630, as amended by Act 45 of 1952, of Title 18 of the Louisiana Revised Statutes of 1950, relative to withdrawal of candidates in primary and general elections, by providing hozv such zvith-drazval shall be made and filed. * * ’ ”
The Act then sets out an identical method of withdrawal in each case.
“The facts clearly show that Candidate Fonti did not file a proper withdrawal, and that he was still legally a candidate. A few moments of reflection will show that to permit other *330 wise would cause the utmost confusion in any number of instances, as it has here. Since Mr. Fonti was legally a candidate, the votes cast for him were legally cast votes and should have been included in the total by the Committee, and their action in subtracting those 185 votes is an irregularity but for which the relator would have been entitled to enter a second primary.
“Since the contestee Louis A. Le-Boeuf, Jr., does not have sufficient votes to constitute a majority, he should be deleted as a nominee of the Democratic Party for the office of Alderman of the City of Gretna, and the Committee should certify relator, Edward L. Hodge, together with Louis A. LeBoeuf, Jr., John R. Ridge and Armand L. Lehnig as the candidates in the second primary election.”
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. And the individual members thereof J. Edward Geliring, Edward Y. Kennedy and i Ered G. Strohmeyer. Louis A. LeBoeuf, Jr., was joined in this suit as the Democratic nominee.

. In the O’Keefe case [226 La. 1039, 78 So.2d 167], the court stated :
. “ * * * The promulgation of the returns by the Committee in this case was on a Friday and, under these circumstances, O’Keefe is not to be penalized for filing his suit on Sunday, which was the last day of the two day period allotted to him by law. And this, despite the jurisprudence, * * * to the effect that dies non are not to be counted in computing the two-day delay allowed by the primary election law and that, if the suit had ieen filed on the Monday fol-loioing the Sunday, it %oould have deen filed on tvme.” (Emphasis added)

. Defendants’ counsel has asserted in oral argument before this court that the language, “Any person nominated as a candidate may cause Ms name to be loithdraion as a candidate by request in writing”, as it appears in LSA-R..S. 18:-311, as amended by Act 281 of 1980, limits this requisite of filing a written notice of withdrawal to candidates who only have been certified as the party’s nominee in a general election. This argument is untenable in view of the fact that the title of the act which amended the statute in question clearly specifies it applies to candidates in primary and general elections.